EMPIRE BLUE CROSS AND BLUE SHIELD, Plaintiff–Appellee,

v.

Reuven FINKELSTEIN and Simon Greenbaum, a/k/a Simon Green, Defendants–Appellants,

Pinchus Horowitz; Levi Horowitz; Steven Stone; Barbara Wexler; Abraham Brin; Michael Klein; Simon Green; KCG Computing, Inc.; G. Contracting, Inc.; Kent Mills, Inc.; East Imports, Inc.; Avrechai Gur; Medin Realty Corp.; Bredis Food Handlers; Zeigel Manor Realty Sales; And Mardon Manufacturing And Hospital Software, Defendants.

No. 1049, Docket 95–7761.

United States Court of Appeals, Second Circuit.

Argued Nov. 28, 1995.

Decided April 10, 1997.

Richard A. Finkel, Meissner, Kleinberg & Finkel, New York City, for Defendants–Appellants.

Boyd M. Johnson, Gibson, Dunn & Crutcher, New York City, for Plaintiff–Appellee.

Before: LUMBARD, ALTIMARI, and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

A motion to dismiss this appeal was filed by plaintiff-appellee Empire Blue Cross and Blue Shield ("Empire"), on November 6, 1995. We granted the motion, with opinion to follow.

By way of background, Empire brought an action in the United States District Court for the Eastern District of New York (Wexler, *J.*) against defendants-appellants Reuven Finkelstein and Simon Greenbaum (and others), for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)–(d), and for common law fraud, arising out of a conspiracy in which numerous individuals were fraudulently enrolled for Empire Health Insurance coverage between 1984 and 1991. Following a three-day bench trial, the district court issued findings of fact and conclusions of law directing the Clerk of the Court to enter judgment in favor of Empire and against Finkelstein and Greenbaum in the amount of $82,275,240 plus costs and attorney's fees. Finkelstein and Greenbaum timely filed notices of appeal.

Empire's motion asked that we dismiss the appeal under the fugitive disentitlement doctrine. The motion recited that Empire had properly served notices of deposition in aid of Empire's efforts to collect the judgment, but that Finkelstein and Greenbaum failed to comply. The district court then ordered that defendants appear before the court, but they failed to do so. A process server made four futile attempts to serve Finkelstein and Greenbaum at the addresses their counsel had provided (on September 21, 22, and 27, 1995), followed by unsuccessful efforts by Empire's counsel to reach Finkelstein and Greenbaum by telephone (again at the numbers provided by their counsel). Neither defendant ever returned the phone calls.

On October 27, the district court held a hearing concerning the defendants' failures to appear for depositions and to obey the court's order to appear before the court. At that hearing, the court granted Empire's motion for bench warrants to be issued for the arrest of Finkelstein and Greenbaum. On October 30, the district court ordered the Clerk of the Court to issue the warrants and deliver them to the U.S. Marshal. The court stayed execution until November 1, 1995, at 2 p.m., so that defendants might have another chance to comply with the court's order to appear. Neither man appeared, and on November 1 at 3:30 p.m., the Clerk of the Court issued warrants for their arrest. The bench warrants provided that the marshals should arrest Greenbaum and Finkelstein for refusal "to obey Court Order, dated October 30, 1995," in violation of 18 U.S.C. § 401.[1] Finkelstein and Greenbaum have neither surrendered nor been found.

On November 23, 1995, we heard Empire's motion to dismiss this appeal, and granted it from the bench, with opinion to follow. On May 17, 1996, we directed the district court to make further findings of fact that had potential bearing on the issue. The district court made the following findings on July 2, 1996, in response to the following questions:

Q. First, did the Defendants knowingly and wilfully make themselves unavailable for service of process and post-trial depositions?

A. The defendants knowingly and wilfully made themselves unavailable for service of process and post-trial depositions.

Q. Did the Defendants' absence—intentional or otherwise—render Empire's judgment against them unenforceable?

A. The defendants' absence rendered Empire's judgment against them unenforceable.

On June 10, 1996, subsequent to our ruling from the bench, the Supreme Court issued its opinion in *Degen v. United States,* —— U.S. ——, 116 S.Ct. 1777, 135 L.Ed.2d 102, which held that a district court could not grant summary judgment against a claimant in a forfeiture proceeding for failure to appear in a related criminal prosecution, and impliedly overruled our opinion in *United States v. Eng,* 951 F.2d 461 (2d Cir.1991)

---

**1.** 18 U.S.C. § 401 provides in part that "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as ... 3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

(disentitling defendant from contesting a civil forfeiture proceeding for so long as defendant's absence frustrated a related criminal prosecution). *See Degen,* —— U.S. at ——, 116 S.Ct. at 1780. The question presented in this state of affairs is whether defendants in a civil proceeding retain the ability to prosecute an appeal from a judgment despite their status as fugitives from court orders and a bench warrant issued to compel their presence at proceedings necessary to effectuate that judgment. We hold that they are disentitled from prosecuting such an appeal.

## DISCUSSION

### A. Fugitive Disentitlement Doctrine

It is well settled in criminal cases that courts have the authority to "dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega–Rodriguez v. United States,* 507 U.S. 234, 239, 113 S.Ct. 1199, 1203, 122 L.Ed.2d 581 (1993); *see also Estelle v. Dorrough,* 420 U.S. 534, 537, 95 S.Ct. 1173, 1175–76, 43 L.Ed.2d 377 (1975) (upholding Texas statute providing for automatic dismissal of appeals where defendant escaped during pendency of appeal and did not return within ten days); *Eisler v. United States,* 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949) (removing case from docket upon discovery that petitioner had fled the country after submission of cause on the merits); *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876) (removing case from docket upon discovery that petitioner had escaped from custody). This Court—as well as the other Courts of Appeals—has adopted the fugitive from justice rule, also known as the fugitive disentitlement doctrine. *See, e.g., United States v. Baccollo,* 725 F.2d 170, 171 (2d Cir.1983); *Stern v. United States,* 249 F.2d 720, 722 (2d Cir.1957) (per curiam); *see also In re Prevot,* 59 F.3d 556, 562–65 (6th Cir.1995) (citing numerous cases), *cert. denied,* —— U.S. ——, 116 S.Ct. 1048, 134 L.Ed.2d 194 (1996).

We have advanced four rationales for disentitling fugitives: 1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape. *Bar–Levy v. United States Dep't of Justice,* 990 F.2d 33, 35 (2d Cir.1993) (Feinberg, *J.*) (citation omitted). Bearing these objectives in mind, we have noted and exercised our discretion to apply the fugitive disentitlement doctrine in appeals from a variety of civil cases and proceedings. *See, e.g., id.* at 34–35 (dismissing appeal from denial of application for waiver of deportation where appellant failed to surrender for deportation); *Esposito v. INS,* 987 F.2d 108, 110 (2d Cir.1993) (declining to exercise discretion to disentitle alien's appeal of deportation order but noting authority to do so); *United States v. Eng,* 951 F.2d 461, 465–67 (2d Cir.1991) (pre-*Degen* case affirming default judgment for government in civil forfeiture proceeding where defendant was fugitive and continually fought extradition to United States); *United States v. $45,940 in United States Currency,* 739 F.2d 792 (2d Cir.1984) (pre-*Degen* case affirming judgment for government in civil forfeiture proceeding where defendant was fugitive and made no effort to return to United States). *See also Conforte v. Commissioner of Internal Revenue,* 692 F.2d 587, 589 (9th Cir.1982) ("[A]s other courts have recognized, the rule should apply with greater force in civil cases where an individual's liberty is not at stake."); *Lopez v. Malley,* 552 F.2d 682, 683 (10th Cir.1977) (per curiam) (no distinction between criminal appeals and petitions for habeas corpus for purposes of fugitive disentitlement doctrine).

In 1993, the Supreme Court clarified the scope of the disentitlement doctrine by expressly requiring a nexus between fugitivity and the course of appellate proceedings. *Ortega–Rodriguez,* 507 U.S. at 242–48, 113 S.Ct. at 1205–07. The defendant in that case had fled, but had been recaptured prior to appealing his sentence. The Eleventh Circuit dismissed his appeal by reason of his prior flight. The Supreme Court considered whether disentitlement was proper once the defendant was back in custody, and ruled that "[a]bsent some connection between ... fugitive status and [the fugitive's] appeal, as provided when a defendant is at large during

the ongoing appellate process, the justifications advanced for dismissal of fugitives' pending appeals generally will not apply." *Id.* at 249, 113 S.Ct. at 1208 (citation and internal quotations omitted). The Court thus vacated the Eleventh Circuit's decision, because it was based on "the faulty premise that any act of judicial defiance, whether or not it affects the appellate process, is punishable by appellate dismissal," and remanded for consideration of whether such a connection existed. *Id.* at 250, 113 S.Ct. at 1209–10.

Most recently, in *Degen v. United States,* the Supreme Court reversed the Ninth Circuit's holding that a district court could enter summary judgment against a claimant in a forfeiture proceeding by reason of his failure to appear in a related criminal prosecution. —— U.S. at ——, 116 S.Ct. at 1779. The Court began its analysis by noting that courts do have the authority to dismiss an appeal "if the party seeking relief is a fugitive while the matter is pending." *Id.* at ——, 116 S.Ct. at 1781. Two rationales were advanced to support this proposition: first, so long as the party cannot be found, enforcement of any judgment on review may be impossible. Second, an appellant's escape "disentitles him to call upon the resources of the Court for determination of his claims." *Id.* at ——, 116 S.Ct. at 1781 (quoting *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 498–99, 24 L.Ed.2d 586 (1970)) (internal quotations omitted).

The Court in *Degen* then examined the factual setting of the case, and determined that—as in *Ortega–Rodriguez*—blanket disentitlement could not be justified. First, there was no risk of delay, or frustration in determining the merits of the forfeiture proceeding or in enforcing the resulting judgment; the court's jurisdiction over the property at issue in the forfeiture proceeding was secure, so that there was no risk that the judgment would be unenforceable, notwithstanding Degen's absence. *Id.* at ——, 116 S.Ct. at 1781. Second, although there was a risk that the criminal proceeding might be compromised by Degen's participation in the forfeiture proceeding, the Court concluded that the district court had the resources to deal with that problem without resort to

disentitlement. *Id.* at —— – ——, 116 S.Ct. at 1781–82. These means included: 1) the authority to manage discovery in a civil suit, including the power to limit discovery in the interests of justice; 2) the ability to manage a civil case to avoid interference with a related criminal case (*i.e.,* limiting the form of proof or limiting the theories Degen could pursue in the civil proceeding); and 3) the availability of means to enforce court orders, including dismissal, if Degen's fugitive status prevented compliance with a district court order in a civil proceeding. *Id.* at ——, 116 S.Ct. at 1782. Thus the Court found that the availability of alternative means for protecting the government's interests rendered disentitlement an overbroad measure in the circumstances. *Id.*

## B. Application of Fugitive Disentitlement Doctrine to this Case

### 1. *Fugitive Status*

 We recognize that the doctrine of disentitlement is most typically enforced against fugitive criminal defendants. A fugitive from justice has been defined as "[a] person who, having committed a crime, flees from [the] jurisdiction of [the] court where [a] crime was committed or departs from his usual place of abode and conceals himself within the district." *Black's Law Dictionary,* 5th ed. (1979). Although the disentitlement doctrine applies only to fugitives from justice, we have ruled that a fugitive from justice need not be a fugitive in a criminal matter to warrant application of the disentitlement doctrine. *See Bar–Levy,* 990 F.2d at 35.

Although defendants' counsel argues that his clients are not actually fugitives from justice because they are not criminal defendants, the record in this case justifies fugitive status. Finkelstein and Greenbaum failed to show up for their properly-noticed depositions and failed to comply with a court order to appear before the district court. Efforts failed to contact or locate the defendants at the addresses and phone numbers supplied by their own counsel. Finally, after four futile visits by a process server, the district court issued bench warrants for the arrest of

Finkelstein and Greenbaum.[2] Even then, the district court waited four days after granting Empire's application (in the presence of defendants' counsel) to issue the warrants, giving Finkelstein and Greenbaum one last opportunity to comply with the court's order. Finkelstein and Greenbaum did not comply, nor have they submitted to the warrants at any time during the last seventeen months. Finkelstein and Greenbaum are not in custody and have not surrendered to the authorities; their whereabouts are unrevealed. They are facing an immense judgment. Finkelstein and Greenbaum have continued to evade arrest, and are therefore fugitives from justice.

### 2. *Disentitlement*

 *Degen* makes it clear that disentitlement is not automatically available in civil matters where the party seeking relief has become a fugitive in a related criminal prosecution. ——— U.S. at ———–———, 116 S.Ct. at 1780–83. However, *Degen* did not address the question of whether a fugitive defendant in a civil action may forfeit the right to appeal an adverse judgment in that same proceeding. We hold that we have discretion to dismiss the appeal of a civil litigant who becomes a fugitive to escape the effect of the civil judgment.

 *Degen* does not overturn, subvert, or call into question the principle that underlies *Ortega–Rodriguez* as well as our resolution of this appeal: a fugitive whose absence severely prejudices a proceeding may forfeit the right to appeal an adverse judgment entered *in that case. See Ortega–Rodriguez,* 507 U.S. at 240–42, 113 S.Ct. at 1204 ("[O]ur cases consistently and unequivocally approve dismissal as an appropriate sanction when a prisoner is a fugitive during the ongoing appellate process.") (internal quotations omitted).

Disentitlement is appropriate in the present situation, for several reasons. (i) In contrast to *Degen,* the disappearance of Finkel-stein and Greenbaum does not affect some related matter; it impacts the very case on appeal. We see no reason to "entertain the cause of one who will respond to a judgment only if it is favorable." *Ali v. Sims,* 788 F.2d 954, 959 (3d Cir.1986) (citing *United States v. Swigart,* 490 F.2d 914, 915 (10th Cir. 1973)).(ii) In *Degen,* the judgment in the civil proceeding could be enforced despite Degen's absence. Enforceability concerns clearly animate disentitlement doctrine, *see Ortega–Rodriguez,* 507 U.S. at 244–46, 113 S.Ct. at 1206; here, Judge Wexler has found that "the defendants' absence rendered Empire's judgment against them unenforceable." *Decision and Order,* 91–Civ–4816 (LDW) (July 2, 1996), at 3. This factor weighs heavily in favor of disentitlement. (iii) There is nothing that the district court can do, consistent with the efficient conduct of its functions, that might restore the balance of equities, because the civil proceeding—other than the futile efforts to enforce it—is complete. Disentitlement therefore represents the sole remaining means of minimizing the prejudice to Empire caused by defendants' fugitive status. *See Degen,* ——— U.S. at ———, 116 S.Ct. at 1782.

The Court in *Degen* was concerned that a fugitive not suffer disentitlement absent some great prejudice to others. Here, Empire has been prejudiced—perhaps irrevocably—by the defendants' absence. The district court has found that the defendants knowingly and wilfully made themselves unavailable for service of process and post-trial depositions, and that this absence has rendered the judgment unenforceable. In short, *Degen* merely limits our discretion to employ the fugitive disentitlement doctrine. As so limited, we exercise our discretion here to dismiss this appeal for the reasons stated.

<hr>

**2.** Defendants' counsel urges that we consider Empire's various attempts to serve Finkelstein and Greenbaum "insufficient and unreasonable," because defendants are both observant Hasidic Jews and the two initial attempts at service were both made several days before the start of the High Holy Days of Rosh Hashanah. We see no reason why attempts at service made three and two days, respectively, before the holiday should be considered unreasonable.