■ SHARON WECHSLER, Respondent, v NORMAN WECHSLER, Appellant. [847 NYS2d 26]—

Appeal from judgment of divorce, Supreme Court, New York County (Judith J. Gische, J.), entered February 3, 2006, inter alia, equitably distributing marital property, unanimously dismissed, without costs, with leave to defendant-appellant for a motion to reinstate the appeal on condition that appellant, within 20 days after service of a copy of this order, posts an undertaking in the amount of $9,151,920.57.

Plaintiff-respondent moves to dismiss this appeal by defendant-appellant on the ground that appellant is a fugitive from this jurisdiction and barred from maintaining this appeal under the fugitive disentitlement doctrine. Appellant separately moves to stay enforcement of the judgment of divorce pending resolution of the appeal.

By a judgment of divorce, entered February 3, 2006, appellant was directed, among other things, to pay respondent a distributive award of $22,770,623 in 60 equal installments of $379,510.50, and monthly maintenance of $46,666.66 until ap-

pellant transferred certain assets to respondent. Appellant appealed from the judgment and sought from this Court a stay of enforcement. By an order dated May 9, 2006, that motion was denied.

By an order to show cause, executed May 23, 2006, respondent moved to enforce the judgment of divorce, seeking a judgment for certain arrears and to hold appellant in contempt for failing to comply with the terms of the judgment of divorce. On July 17, 2006, Supreme Court held a hearing on that motion. The court ordered appellant to comply with provisions of the judgment of divorce requiring him to transfer to respondent certain securities and retirement accounts. The court also ordered appellant to transfer to respondent $13,562,880 in proceeds from the sale of securities that appellant sold notwithstanding that he was directed to transfer the securities themselves to respondent. Appellant was ordered to transfer the assets to respondent within 30 days of the hearing. The court held the contempt motion in abeyance and adjourned it to September 5, 2006.

Appellant did not comply with the court's July 17 directives, and, on August 21, 2006, respondent filed a judgment against him in the amount of $17,669,678.57. On the adjourned date, September 5, Supreme Court found that appellant had "wilfully disobey[ed]" the judgment of divorce by failing to transfer the assets, and granted respondent's motion to hold appellant in contempt. By a warrant, entered on October 20, 2006, Supreme Court ordered that appellant be arrested and incarcerated. No appeals were taken from the July 17 order, the August 21 judgment or the September 5 order.

By an order to show cause, executed on September 11, 2006, appellant moved to enjoin respondent from enforcing the August 21 judgment and to reduce the amount he had been ordered to pay. Appellant maintained that respondent must share in a substantial tax obligation appellant incurred after the entry of the judgment of divorce. Supreme Court set the return date for October 24, which was ultimately adjourned to November 3, required both parties to appear and directed appellant to "cause[ ] to be secured in an escrow account held by his attorneys" approximately $8.6 million. Appellant did not appear at the November 3 hearing, and did not place any money into an escrow account. When asked why appellant did not appear as directed, his counsel stated: "[appellant] is physically ill and there is an arrest warrant. And [appellant] believes if he would be incarcerated even for a short period of time it would be a grave risk to his life." By a written order, entered December 5,

Supreme Court denied appellant's motion and granted respondent's cross motion for a judgment against appellant for approximately $1 million in maintenance and distributive award arrears. No appeal was taken from this order.

On May 1, 2007, the appeal from the judgment of divorce was argued. On August 16, 2007, respondent moved to dismiss the appeal on the ground that appellant is a fugitive from this jurisdiction and barred from maintaining this appeal under the fugitive disentitlement doctrine. Appellant opposed the motion to dismiss, and separately moved to stay enforcement of the judgment of divorce pending resolution of the appeal.

"The fugitive disentitlement doctrine permits a court to 'dismiss an appeal . . . if the party seeking relief is a fugitive while the matter is pending' (*Degen v United States*, 517 US 820, 824 [1996]; *see Ortega-Rodriguez v United States*, 507 US 234, 242 [1993]). The doctrine is based on the inherent power of courts to enforce their judgments (*see Degen v United States*, *supra* at 823), and it has long been recognized and applied to those who evade the law while simultaneously seeking its protection (*see Bonahan v Nebraska*, 125 US 692 [1887]; *Smith v United States*, 94 US 97 [1876])" (*Matter of Skiff-Murray v Murray*, 305 AD2d 751, 752 [2003]). The doctrine applies in civil cases provided there is a nexus between the appellant's fugitive status and the appellate proceedings (*id.* at 753). The nexus requirement is satisfied where the appellant's absence frustrates enforcement of the civil judgment (*id.*). The principal rationales for the doctrine include: (1) assuring the enforceability of any decision that may be rendered against the fugitive; (2) imposing a penalty for flouting the judicial process; (3) discouraging flights from justice and promoting the efficient operation of the courts; and (4) avoiding prejudice to the nonfugitive party (*Empire Blue Cross & Blue Shield v Finkelstein*, 111 F3d 278, 280 [2d Cir 1997]).

In *Skiff-Murray*, the respondent father was ordered by a hearing examiner to pay monthly child support in the amount of $1,252. Family Court, imputing to the father various sources of income, increased his monthly child support to $1,875, and confirmed the hearing examiner's denial of the petitioner mother's request for attorneys' fees. Both the father and mother appealed. However, the father refused to attend the trial in the parties' divorce action, voluntarily departed from New York, and willfully disobeyed the child support order from which the parties appealed. As a result, Family Court issued a bench warrant and order of commitment. The mother moved to dismiss the father's appeal, arguing that, as a result of the warrant, he

was a fugitive from the jurisdiction and could not seek judicial relief under the fugitive disentitlement doctrine.

The Third Department agreed with the mother and dismissed the father's appeal. Central to the Court's conclusion that the father's appeal should be dismissed was the father's willful and deliberate removal of himself from the jurisdiction by leaving the State, transferring his assets and failing to appear in proceedings to enforce the child support order (*id.* at 753). Thus, the Court determined, the father willfully made himself unavailable to obey the mandate of Family Court in the event of an affirmance of the child support order (*id.*).

This Court's decision in *James v Powell* (27 AD2d 814 [1967]), cited by the Third Department in *Skiff-Murray*, is also instructive. In *James*, the defendant was found, after a trial, to have libeled the plaintiff and a judgment for damages was entered against the defendant. The defendant subsequently failed to obey at least one order of Supreme Court requiring him to appear for an examination in aid of enforcement of the judgment. The defendant was held in contempt and an ex parte order of commitment was issued. The defendant's motion to vacate the ex parte order of commitment was denied, and he appealed.

This Court dismissed the appeal without prejudice to renewal of the appeal after the defendant submitted himself to the jurisdiction of the court by complying with the underlying contempt order (*id.* at 814). We found that the defendant "willfully remained outside of the State in order to avoid the jurisdiction and authority of our courts. He . . . chose[ ] to do so, but the courts will not . . . hear [the appeal] intended to review the proceedings against him which have resulted in his present plight" (*id.*). We noted that "[i]f [the defendant] sincerely desires a review by the courts of this State of the previous proceedings the best proof he can make of the fact is to present himself to the officer who holds, and whose duty it is to arrest him on the commitment (*id.* at 814-815 [internal quotation mark omitted]).

Here, appellant, having been adjudicated in contempt of court and made the subject of an arrest warrant, is a fugitive (*see Skiff-Murray, supra; Finkelstein, supra*).* That appellant is a resident of Colorado is immaterial; he is wanted in New York pursuant to a warrant and refuses to return to this State. Furthermore, there is a nexus between appellant's fugitive status and the appellate proceedings. Appellant's fugitive status

---

* Appellant improperly attempts to attack collaterally Supreme Court's determination that he was in contempt. The question of the efficacy of that determination, from which appellant did not appeal, is not properly before us.

resulted from his failure to comply with an order enforcing the judgment of divorce requiring him to transfer to respondent substantial assets, and his refusal to return to New York. Indeed, appellant's counsel acknowledged to Supreme Court at the hearing on appellant's motion to reduce the amount of money he owed respondent that he did not appear in court as directed because he was afraid of being arrested and incarcerated pursuant to the warrant. Appellant's appeal is from the judgment of divorce, the underlying charter of his financial obligations to respondent, and all postjudgment proceedings before Supreme Court and this Court have revolved around that charter. Appellant's absence from the State owing to his fugitive status has, as evidenced by the multiple motions and applications made before both Supreme Court and this Court, frustrated respondent's enforcement of the judgment of divorce. Moreover, under these circumstances, the principal rationales for the doctrine—imposing a penalty for flouting the judicial process, discouraging flights from justice and promoting the efficient operation of the courts, and avoiding prejudice to the nonfugitive party—would be vindicated by dismissing the appeal.

At bottom, appellant has willfully remained outside of New York in order to avoid the jurisdiction and authority of the courts of this State (*James*, 27 AD2d at 814), and we will not afford him review of the judgment of divorce since he has evaded court mandates (*Skiff-Murray*, 305 AD2d at 753). Our dismissal of the appeal is with leave to appellant for a motion to reinstate the appeal on the condition that appellant, within 20 days of service of a copy of this order, posts an undertaking in the amount of $9,151,920.57, representing the amount Supreme Court required him to transfer to his attorney's escrow account in signing the September 11, 2006 order to show cause and $500,000 in additional security relating to other amounts owed (*see generally Matter of Gerald G. G.*, 46 NY2d 813 [1978], *appeal dismissed* 46 NY2d 1036 [1979]; *Skiff-Murray*, 305 AD2d at 754; *James*, 27 AD2d at 814). Concur—Friedman, J.P., Marlow, Sullivan and McGuire, JJ.