[995 NYS2d 105]

In the Matter of OLIVER ALLAIN, Respondent, v CHRISTINA ORIOLA-ALLAIN, Appellant.

Second Department, October 22, 2014

### APPEARANCES OF COUNSEL

*Obayomi Ayotunde Awoyinfa*, Fresh Meadows, for appellant.

*Leonard R. Sperber*, Garden City (*Michelle S. Stein* of counsel), for respondent.

### OPINION OF THE COURT

ROMAN, J.

On appeal, we consider whether it is proper in the context of this child support proceeding to apply the fugitive disentitlement doctrine, which permits a court, under certain circumstances, to dismiss an appeal where the party seeking relief is a fugitive while the matter is pending (*see Degen v United States*, 517 US 820, 824 [1996]; *Matter of Skiff-Murray v Murray*, 305 AD2d 751 [2003]). For the reasons that follow, we conclude that application of the doctrine is appropriate under the circumstances of this case and, therefore, the mother is precluded from maintaining this appeal.

Factual and Procedural Background

The appellant, Christina Oriola-Allain (hereinafter the mother), and the petitioner, Oliver Allain (hereinafter the father), were married in October 2000 in the State of New York. They have one son, who was born on July 13, 2001, and is now 13 years old. The parties were divorced pursuant to a judgment entered November 10, 2005, and the father was awarded sole custody of the child. Pursuant to the judgment, the Supreme Court imputed annual income of $100,000 to the mother, who was employed as a systems engineer, and directed her to make monthly child support payments in the sum of $1,296.34.

In the ensuing four years, the mother filed five petitions in the Family Court seeking a downward modification of her child

support obligation, all of which either were withdrawn or dismissed. The father filed two violation petitions, in May 2008 and January 2009, respectively, both of which resulted in the issuance of orders directing the mother to pay child support arrears.

In December 2009, the Family Court issued an order increasing the mother's monthly child support obligation to $1,467. In the following eight months, the mother filed two additional petitions for a downward modification of her child support obligation, both of which were dismissed.

In October 2011, the Commissioner of the Department of Social Services of the County of Suffolk (hereinafter the Commissioner) petitioned the Family Court on behalf of the father, alleging, inter alia, that the mother had willfully failed to obey the December 2009 support order, and that she then owed $46,184.18 in child support arrears. Pursuant to a summons dated November 4, 2011, the mother was summoned to appear at an initial hearing scheduled for November 21, 2011. The record indicates that the mother was not present in court on November 21, 2011, and that the matter was adjourned for a telephone conference to be held on December 21, 2011. At some point in 2011, the mother left New York and relocated to Nigeria. Although it is not clear precisely when the mother relocated, the record indicates that she participated in the telephone conference that was conducted on December 21, 2011, and that the proceedings were adjourned on that date to January 17, 2012, for a hearing during which the mother was scheduled to appear by telephone from Nigeria.

Despite having been granted permission to appear by telephone from Nigeria, the mother sent a letter to the Family Court dated January 13, 2012, seeking an adjournment of the hearing scheduled for January 17, 2012, on the ground of social and political upheaval in that country. In February 2012, the mother sought a further adjournment of the proceedings on the ground that she was hospitalized with pneumonia.

The proceedings were ultimately adjourned to April 19, 2012. On that date, a Support Magistrate conducted a hearing on the Commissioner's October 2011 petition, at which the mother was permitted to appear by telephone. Following the hearing, the Support Magistrate issued findings of fact dated April 23, 2012, and an order of disposition dated April 27, 2012, among other things, finding that the mother had willfully violated the December 2009 order. The mother was directed to pay

$28,363.31 in child support arrears as of April 15, 2012, and the Support Magistrate recommended that she be incarcerated. The matter was referred to a Family Court judge for confirmation.

On April 27, 2012, Family Court Judge John Kelly adjourned the proceeding to June 8, 2012, and directed the mother to personally appear on that date. Notwithstanding this mandate, the court provided the mother with the opportunity to make an application, by May 18, 2012, for leave to appear by telephone. However, the mother did not make any such application. On May 24, 2012, the mother filed written objections to the Support Magistrate's findings, inter alia, that she willfully violated the December 2009 order by failing to pay child support arrears, and the Support Magistrate's calculation of the amount of arrears.

On June 7, 2012, the mother's counsel sought an adjournment due to his own illness, and the proceeding was adjourned to July 31, 2012. Thereafter, by notice of motion dated July 30, 2012, the mother sought to stay the proceedings with respect to her incarceration while her objections were pending. On July 31, 2012, the Family Court received correspondence from the mother requesting an adjournment due to the death of her grandmother, her inability to obtain leave from employment, and her pregnancy. The mother also sought leave to appear on a future date by telephone. The court indicated that it would issue a bench warrant for the arrest of the mother, which it would stay for two weeks, and that a written order would follow.

The Order Appealed From

In an order dated August 2, 2012, the Family Court denied the mother's objections, her motion to stay the proceeding, and her application to adjourn the proceeding and for leave to testify by telephone. The court determined that the objections were improper, inasmuch as the Support Magistrate's finding that the mother willfully violated the December 2009 order of child support and recommendation that the mother be incarcerated were not final determinations to which objections could be made but were, respectively, a nonfinal finding and a recommendation that would only become binding upon confirmation by a Family Court judge. In addition, the court concluded that the mother had failed to set forth any error or abuse of discretion on the part of the Support Magistrate in calculating her arrears.

The Family Court also denied the mother's application for further adjournment "due to the extensive and protracted history of litigation" and the mother's "repeated attempts to cre-

ate undue delay of the resolution of this matter." Further, the court denied the mother's application for leave to appear electronically "due to the nature of the proceedings and the Court's inability to effectuate sentence, given the [mother's] repeated failure to appear, if the Court [did] order [her] to be incarcerated after [a] hearing."

The Family Court issued a warrant for the mother's arrest, based on her failure to appear, but stayed the issuance of the warrant until August 17, 2012, in order to provide the mother with an opportunity to appear before the court for a hearing with respect to the confirmation of the Support Magistrate's findings and recommendation of incarceration. However, the mother never personally appeared.

Analysis

On appeal, the mother contends that the Family Court erred in declining to grant her an adjournment of the proceeding that was scheduled for July 31, 2012, and in denying her application to testify by telephone. In addition, she contends that the court erred in issuing a warrant for her arrest.

The father contends that the appeal should be dismissed pursuant to the fugitive disentitlement doctrine, since the mother continues to evade the jurisdiction of the New York State courts.

"It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his [or her] appeal" (*Ortega-Rodriguez v United States*, 507 US 234, 239 [1993]; *see Smith v United States*, 94 US 97 [1876]). The "fugitive disentitlement doctrine," which has its origin in criminal law, is based upon the inherent power of the courts to enforce their judgments, and has long been applied to those who evade the law while simultaneously seeking its protection (*Wechsler v Wechsler*, 45 AD3d 470, 472 [2007]; *see Degen v United States*, 517 US 820, 823-824 [1996]; *Molinaro v New Jersey*, 396 US 365, 366 [1970]; *People v Taveras*, 10 NY3d 227, 232 [2008]; *Matter of Skiff-Murray v Murray*, 305 AD2d 751, 752 [2003]). Several rationales have been advanced for disentitling fugitives, including: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape" (*Empire Blue Cross & Blue Shield v Finkelstein*, 111 F3d 278, 280 [2d Cir 1997]; *see People v Taveras*, 10 NY3d at 232; *Wechsler v Wechsler*, 45 AD3d at 472).

To apply the fugitive disentitlement doctrine, there must be a "connection between a defendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response" (*Ortega-Rodriguez v United States*, 507 US at 244; *see Wechsler v Wechsler*, 45 AD3d at 472). The doctrine has been extended to the dismissal of appeals in civil cases provided there is likewise a nexus between the appellant's fugitive status and the appellate proceedings (*see Wechsler v Wechsler*, 45 AD3d at 472; *Matter of Skiff-Murray v Murray*, 305 AD2d at 752). The nexus requirement is satisfied in civil cases "where the appellant's absence frustrates enforcement of the civil judgment" (*Wechsler v Wechsler*, 45 AD3d at 472; *see Matter of Skiff-Murray v Murray*, 305 AD2d at 753; *see also Empire Blue Cross & Blue Shield v Finkelstein,* 111 F3d at 282; *compare Degen v United States*, 517 US at 825-829 [although the defendant did not return to the United States to face criminal charges against him, disentitlement was unwarranted in a related civil proceeding because, among other things, there was no risk of delay or frustration in enforcing the resulting judgment]).

While no known decision in the Second Judicial Department has adopted the "fugitive disentitlement doctrine" by name, the Third and Fourth Judicial Departments have done so (*see Matter of Shehatou v Louka*, 118 AD3d 1357 [2014]; *Matter of Skiff-Murray v Murray*, 305 AD2d at 752-753). Furthermore, this Court, like the Court of Appeals and the Appellate Division in each of the other judicial departments, has dismissed appeals by fugitives in criminal proceedings "on the comparable ground that 'the appellant is not presently available to obey the mandate of the Court in the event of an affirmance' " (*Matter of Skiff-Murray v Murray*, 305 AD2d at 753, quoting *People v Sullivan*, 28 NY2d 900, 901 [1971]; *see People v Howe*, 256 AD2d 476 [1998]; *People v Jones*, 245 AD2d 1144, 1145 [1997]; *People v Mota*, 210 AD2d 435 [1994]; *People v Smith*, 115 AD2d 625 [1985]; *People v Davis*, 87 AD2d 578 [1982]; *see also People v Figueroa*, 82 NY2d 819 [1993]; *People v Hernandez*, 266 AD2d 116, 117 [1999]; *People v Hampton*, 226 AD2d 824, 825 [1996]).

This Court has also employed the "unavailable-to-obey" paradigm in dismissing an appeal in a juvenile delinquency proceeding, which, in contrast to a criminal prosecution, is civil in nature (*see Matter of Roshon P.*, 182 AD2d 346, 349 [1992]). In *Matter of Magdalene N.* (180 AD2d 799 [1992]), the juvenile appellant had absconded from her placement, and a warrant was issued for her arrest. As noted, this Court concluded that

dismissal of the juvenile's appeal was appropriate since she was "unavailable to obey the mandate of the court" (*id.* at 799; *see Matter of Skiff-Murray v Murray*, 305 AD2d at 753 [noting that the Court of Appeals and the Appellate Division, First Department, have also used the "unavailable-to-obey" paradigm to dismiss fugitives' appeals in civil proceedings]).

The Appellate Division, Third Department, in *Matter of Skiff-Murray v Murray* (305 AD2d at 751) became the first New York appellate court to apply the doctrine in a case involving child support. There, the respondent was directed to pay child support pursuant to an order dated March 1, 2002. The respondent appealed from that order, and moved to strike certain judicial documents placed in an addendum to the petitioner's brief, which indicated that the respondent had refused to attend trial in the underlying divorce action, voluntarily departed the state, and willfully disobeyed the child support order, resulting in the issuance of a bench warrant for the respondent's arrest and an order of commitment (*id.* at 752). The petitioner opposed the motion and cross-moved to dismiss the respondent's appeal based upon the fugitive disentitlement doctrine (*see id.*). The Third Department, applying the doctrine, held as follows:

> "On her cross motion here, petitioner asserts that respondent willfully and deliberately removed himself from the jurisdiction of the New York courts by transferring his assets, leaving the state and failing to appear in proceedings to enforce the March 2002 support order. There are no contentions to the contrary. In addition, we take judicial notice of the subsequent orders submitted by petitioner to the extent that they establish respondent's absence and default in Family Court proceedings involving the very order from which he seeks relief on appeal. Thus, we find that respondent has willfully made himself unavailable to obey the mandate of the Family Court in the event of an affirmance, and grant petitioner's cross motion for dismissal of his appeal on that ground" (*id.* at 753).

More recently, in *Matter of Christie S. v Marqueo S.* (106 AD3d 592 [2013]), the Appellate Division, First Department, dismissed an appeal from an order confirming a Support Magistrate's finding that the appellant had willfully violated an order of support. The Court, citing *Matter of Skiff-Murray*, noted that the appellant was presently a fugitive who was unavailable

to obey the Family Court's mandate in the event of an affirmance, and concluded that "his appeal may not be heard" (*id.* at 593). The Appellate Division, Fourth Department, also relied on the fugitive disentitlement doctrine to dismiss an appeal by a California resident subject to arrest for the willful violation of a New York support order who refused to return to this state (*see Matter of Shehatou v Louka*, 118 AD3d 1357 [2014]).

Applying these principles here, we find that dismissal of the appeal is warranted pursuant to the fugitive disentitlement doctrine. The record reveals that the mother deliberately removed herself from the jurisdiction of the New York courts concomitant with the filing of the October 2011 violation petition, which alleged that she had willfully failed to obey the December 2009 child support order. She thereafter failed to personally appear before the Family Court, and a bench warrant was issued to secure her return. However, the mother continued to evade the court, rendering her a fugitive (*see Empire Blue Cross & Blue Shield v Finkelstein*, 111 F3d at 281; *Wechsler v Wechsler*, 45 AD3d at 473).

Additionally, there is a nexus between the mother's fugitive status and the appellate proceedings, since her fugitive status related to her failure to comply with the Family Court's prior orders and her refusal to personally appear before that court. Indeed, "by her default and absence," the mother is "evading the very orders from which she seeks appellate relief" (*Matter of Joshua M. v Dimari N.*, 9 AD3d 617, 619 [2004]). Further, the mother's absence from New York has frustrated the father's efforts to enforce the prior child support orders (*see Wechsler v Wechsler*, 45 AD3d at 473-474).

Notwithstanding the foregoing, the mother contends that the fugitive disentitlement doctrine does not apply under the circumstances of this case because the doctrine only applies in situations where an appellant absconds after a proceeding has been commenced, and she moved to Nigeria prior to receiving notice that the Commissioner filed the instant enforcement petition on behalf of the father. However, the mother failed to establish that she left New York and moved to Nigeria prior to receiving notice that the Commissioner filed the instant enforcement petition on behalf of the father. Notably, certain employment letters submitted by the mother indicated that she was still providing a New York address to potential employers as late as February 2012, approximately four months after the Commissioner's petition was filed.

In any event, as set forth above, courts have consistently held that application of the doctrine is appropriate where the appellant has willfully made himself or herself unavailable to obey a court's mandate in the event of affirmance. "[I]t is the flight or refusal to return in the face of judicial action that is the critical predicate to fugitive disentitlement" (*Matsumoto v Matsumoto*, 171 NJ 110, 129, 792 A2d 1222, 1233 [2002]). Here, following the Commissoner's filing of the enforcement petition, the Family Court attempted to secure the mother's appearance before it on several occasions, but the mother failed to appear. The record reflects that the mother willfully and deliberately removed herself from the jurisdiction of the New York courts by leaving the state and failing to appear in subsequent proceedings to enforce the support orders. Under the circumstances of this case, "the principal rationales for the doctrine—imposing a penalty for flouting the judicial process, discouraging flights from justice and promoting the efficient operation of the courts, and avoiding prejudice to the nonfugitive party—would be vindicated by dismissing the appeal" (*Wechsler v Wechsler*, 45 AD3d at 474).

In light of our determination, we need not reach the father's remaining contentions.

Accordingly, the appeal is dismissed.

RIVERA, J.P., DILLON and MILLER, JJ., concur.

Ordered that the appeal is dismissed, with costs.